NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0257n.06

No. 19-5534

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 07, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| DUSTIN JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

_____/

**BEFORE: MERRITT, GUY, and STRANCH, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Dustin Johnson appeals the 108-month sentence he received after pleading guilty to possession with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine. He contends that it was error to calculate his Guidelines range based on post-plea laboratory results that showed the amount of "actual" methamphetamine in that mixture. Johnson also argues that the resulting disparity between his Guidelines range and that of his already-sentenced codefendant was unjust, unfair, and a violation of due process and equal protection. Because these arguments are unavailing, we affirm.

**I.**

Charged as part of a larger methamphetamine-distribution conspiracy, Johnson and his girlfriend Amanda Hampton pleaded guilty to one count of aiding and abetting each other in the

possession with intent to distribute 50 grams or more of a mixture containing methamphetamine. *See* 21 U.S.C. § 841(a) and (b)(1)(B)(viii). As Johnson admitted in his plea agreement, he and Hampton were arrested together in a hotel room from which agents recovered "approximately 80 grams of a mixture or substance containing a detectable quantity of methamphetamine," three loaded firearms, new and used syringes, and more than $40,000 in cash. Johnson stipulated that he was found attempting to flush evidence down the toilet with white powder all over the floor and one of the firearms on the back of the toilet.

The plea agreement contained no agreement as to his sentence, which would be determined by the court based on the PSR, "any information presented by the parties," the Guidelines, and the relevant sentencing factors in 18 U.S.C. § 3553(a). Johnson and the government also expressly retained the right to present additional facts relevant to sentencing. This appeal concerns one such fact—that laboratory testing of the purity of the methamphetamine mixture showed that it contained 67.71 grams of "actual" methamphetamine. This information did not affect Hampton because she had already been sentenced when the lab results became available. Johnson, however, was adversely affected because this new information triggered an increase in his base offense level from 24 to 30 and a corresponding increase in his Guidelines range.

The Drug Enforcement Administration lab results mattered because Johnson's base offense level (like Hampton's) was determined by reference to the Drug Quantity Table, which provides graduated offense levels based on the type and quantity of the drugs involved. *See* USSG § 2D1.1(a)(5) and (c). Methamphetamine is further categorized in terms of purity into "methamphetamine," "methamphetamine (actual)" and "ice." The first of these refers to "the entire weight of any mixture or substance containing a detectable amount" of methamphetamine (*i.e.*, a methamphetamine mixture). USSG § 2D1.1(c) (n.(A)). "Ice," which is not at issue here,

is specifically defined as a mixture containing "d-methamphetamine hydrochloride of at least 80%

purity." *Id*. at (n.(C)). Lastly, "methamphetamine (actual)" refers to "the weight of the controlled

substance, itself, contained in the mixture or substance." *Id*. at (n.(B)) ("For example, a mixture

weighing 10 grams containing [methamphetamine] at 50% purity contains 5 grams of

[methamphetamine] (actual)."). Significantly, the Drug Quantity Table employs a 10:1 weight

ratio between methamphetamine mixtures and actual methamphetamine or ice. In other words, 10

grams of a methamphetamine mixture is the equivalent of 1 gram of actual methamphetamine or

ice. And, in the case of a mixture, the base offense level is to be determined by (1) the entire

weight of the methamphetamine mixture or (2) the weight of the "methamphetamine (actual),

*whichever is greater*." *Id*. (emphasis added).

There is no dispute that Johnson and Hampton were to be held accountable for the same

85-gram methamphetamine mixture, which corresponds to a base offense level of 24. USSG

§ 2D1.1(c)(8) ("[a]t least 50 G but less than 200 G of Methamphetamine"). In Johnson's case,

with the addition of 2 levels for possession of a firearm and the subtraction of 3 levels for

acceptance of responsibility, Johnson's adjusted offense level of 23 and criminal history category

of III produced an effective Guidelines range of 60 to 71 months (restricted by a 60-month

mandatory minimum). Similarly, although Hampton received an additional 2 level minimal-role

adjustment, her adjusted offense level of 21 and criminal history category of IV produced the same

effective Guidelines range as Johnson. In fact, Hampton was sentenced at the bottom of that range

to 60 months of imprisonment before the lab results became available. Much to Johnson's

detriment, his sentencing was delayed for unrelated reasons and the lab results became available a

short time later.

The lab results showed—based on the purity of the entire 85 grams of methamphetamine mixture—that the mixture contained more than 67 grams of "actual" methamphetamine.  And that quantity of "actual" methamphetamine corresponds to a base offense level of 30.  USSG § 2D1.1(c)(5) ("at least 50 G but less than 150 G of Methamphetamine (actual)").  Johnson's PSR was revised accordingly, and with all other calculations remaining the same, his new Guidelines range increased to 108 to 135 months of imprisonment.

Johnson objected, arguing that use of the higher base offense level was inconsistent with his plea agreement, should be rejected due to policy disagreements with the 10:1 mixture-to-actual methamphetamine ratio, and would result in a disparity between his and Hampton's sentences that was unfair, unjust and a violation of due process and equal protection.  The district court addressed Johnson's arguments at sentencing, but overruled his objections and denied his requests for variance.  Johnson was sentenced at the bottom of his revised Guidelines range to 108 months of imprisonment.  This appeal followed.

## II.

Challenges to the procedural or substantive reasonableness of a sentence are reviewed under an abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  For a sentence to be procedurally reasonable, the district court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in [] § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence."  *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51).  Even if a sentence is procedurally reasonable, we ask as part of the substantive reasonableness inquiry whether the district court nevertheless imposed a sentence that is "greater than necessary."  *Holguin-Hernandez*, 140 S. Ct. 762, 766–67 (2020).

A sentence is substantively unreasonable if the court places "too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442. (A defendant's claim "that a sentence is substantively unreasonable is a claim that a sentence is too long."). "Sentences that fall within the applicable Guidelines range are rebuttably presumed to be reasonable." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citing *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc)). In reviewing for substantive reasonableness, the fact that an appellate court would have imposed a different sentence is insufficient to justify reversal of the district court. *See Gall*, 552 U.S. at 51.

**A.**

The district court properly rejected Johnson's argument that use of the higher base offense level was precluded by his plea agreement. It is true that Johnson pleaded guilty to possession with intent to distribute 50 grams or more of "a mixture and substance containing methamphetamine." But that plea served only to limit the statutory penalties to a term of not less than 5 or more than 40 years in prison as prescribed under 21 U.S.C. § 841(b)(1)(B)(viii), not the calculation of the offense level. *See United States v. Molina*, 469 F.3d 408, 414 (5th Cir. 2006) (explaining that the language of the indictment does not determine the offense level under the Guidelines).

Johnson also pointed to the agreement's factual admission that approximately 80 grams of a "mixture containing methamphetamine" was found in the hotel room. It is true, of course, that this admitted nothing about the purity of that mixture. It also did not preclude the government from presenting additional facts at sentencing concerning the purity of that mixture. Indeed, as noted, the plea agreement here even expressly contemplated that additional facts could be presented to and considered by the court. That is precisely what happened.

Nor does the decision in *United States v. Walker* dictate a different conclusion. 688 F.3d 416, 425 n.4 (8th Cir. 2012). There, the issue was whether the testimony presented at sentencing was sufficient to establish by a preponderance of the evidence that the conspiracy involved the distribution of "ice." *Id*. at 424-25. Finding no clear error in the district court's drug quantity determination, the Eighth Circuit suggested that issues of notice and proof might be minimized by having a defendant acknowledge the identity of the controlled substance in his plea agreement. *Id*. at 425 n.4. Although an admission that a substance was "ice" would obviate the need to prove the purity of the substance in question, *Walker* did not hold that the absence of such an admission would somehow limit the proof that could be considered at sentencing.

Here, the district court inquired into and satisfied itself that the timing of the lab report was bad fortune for Johnson—not bad faith by the government—and that Johnson was not seeking to withdraw his plea. It was not error, and therefore not an abuse of discretion, to determine Johnson's base offense level by the weight of the "actual" methamphetamine contained in the mixture that he admitted having possessed with the requisite intent.

**B.**

Arguing for a downward variance, Johnson urged the district court to reject the 10:1 mixture-to-actual methamphetamine ratio in favor of the lesser base offense level that would apply to the entire methamphetamine mixture. The issue was addressed at sentencing, but the district court was not persuaded to vary downward for policy reasons.

The advisory Guidelines range is "the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall*, 552 U.S. at 49. The district court, however, "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (alterations adopted); *see also*

*Spears v. United States*, 555 U.S. 261, 264 (2009).  Although this authority was recognized in the crack-to-powder cocaine context, it extends to other aspects of the Guidelines.  *United States v. Herrera-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009) ("We thus see no reason to limit the authority recognized in *Kimbrough* and confirmed in *Spears* to the crack-powder cocaine context.").

A number of district courts have rejected the 10:1 mixture-to-actual methamphetamine ratio based on policy disagreements with the Guidelines.  In one such case, the district court joined those cases and declared "a categorical policy disagreement with the methamphetamine guidelines [because] (1) there appears to be no empirical basis for the Sentencing Commission's harsher treatment of offenses involving higher purity methamphetamine; (2) methamphetamine purity is no longer an accurate indicator of a defendant's role in a drug-trafficking conspiracy; and (3) the methamphetamine guidelines create unwarranted sentencing disparities between methamphetamine offenses and offenses involving other major drugs."  *United States v. Bean*, 371 F. Supp. 3d 46, 51 (D. N.H. 2019) (citing cases); *see also United States v. Nawanna*, 321 F. Supp. 3d 943, 955 (N.D. Iowa 2018) (rejecting purity-based disparity and recalculating the base offense level by treating all methamphetamine attributable to the defendant as a methamphetamine mixture).

The question for this court is not whether we might find any of those reasons persuasive— only whether it was an abuse of discretion for the district court to decide *not* to vary downward based on those policy disagreements.  But "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees."  *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (emphasis in original); *see also United States v. Heim*, 941 F.3d 338, 341 (8th Cir. 2019) (refusing to compel

policy disagreement with the methamphetamine Guideline just because other judges have done so). The district court did not abuse its discretion by choosing *not* to disagree with the 10:1 ratio in the Guidelines on policy grounds. *See United States v. Lynde*, 926 F.3d 275, 281 (6th Cir. 2019).[1]

## C.

Johnson also asked the district court to vary from the Guidelines "as a matter of basic fairness, equal protection and due process" to avoid punishing him more severely than Hampton for the same offense involving the "very same drugs, in the very same room, at the very same time." Despite the invocation of constitutional principles in his statement of issues, Johnson has forfeited such claims by failing to flesh out or provide support for a *constitutional* challenge. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) ("[I]ssued adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]."). Johnson did argue for a below-Guidelines sentence to match Hampton's on the grounds that it was unfair or unjust, so we review the substantive reasonableness of his sentence (*i.e.*, that it was greater than necessary to accomplish the goals of § 3553(a)(2)). *See Holguin-Hernandez*, 140 S. Ct. at 766-67; *Vonner*, 516 F.3d at 392.

At sentencing, the government acknowledged that there was something "fundamentally unfair" about the defendants having different Guidelines ranges based on the same drugs. The district court recognized that there was indeed an injustice—but saw it to be the fact that Hampton had escaped a higher sentence because she was sentenced before accurate information about the

---

[1]Johnson does not argue that the district court failed to adequately state its reasons, but if he had, such a claim would be reviewed for plain error because he failed to object on that basis after the court's inquiry pursuant to *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). There is no plain error here.

purity of the methamphetamine mixture was known. Referencing the familiar adage that "two wrongs don't make a right," the district court found that it would be wrong to disregard the additional information in sentencing Johnson. Ultimately, after weighing the relevant § 3553(a) factors, the district court sentenced Johnson at the bottom of his applicable Guidelines range.

At first blush, there is some appeal to Johnson's argument that his sentence was too long because the 4-year difference between Hampton's and Johnson's sentences is directly attributable to the different treatment of the same drugs under the Guidelines. The district court did not find Johnson's sentence would be greater than necessary; rather, Hampton's sentence had failed to reflect the seriousness of the offense or provide just punishment. The disparity was neither arbitrary nor unwarranted, as it resulted entirely from the different information presented at the time of sentencing. The district court correctly observed that § 3553(a)(6) is concerned with national disparities among like offenders in sentencing—not disparities between individual codefendants. *See United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007). While the district court could exercise its discretion to sentence Johnson in light of Hampton's sentence, *id*. at 624, the district court's decision not to vary downward on that basis was not an abuse of that discretion. Johnson's within-Guidelines sentence was not substantively unreasonable.

\* \* \*

The judgment of the district court is **AFFIRMED**.